UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRACI ARMSTRONG, et al.,

Plaintiffs,

-against-

ANNA ELIZABETH,

Defendant.

24-CV-6956 (RFT)

**OPINION & ORDER**

**ROBYN F. TARNOFSKY, United States Magistrate Judge:**

This case is before me on consent for all purposes under 28 U.S.C. Section 636(c). Pending before the Court is the pro se Defendant's motion to amend her answer to add two counterclaims against Plaintiffs, one for tortious interference and one for defamation, both under New York law. (ECF 109, Def.'s Mot. To Amend.) I have carefully considered the parties' submissions, and for the reasons set forth below, the motion to amend is **DENIED**.

## BACKGROUND

### I. Factual Allegations

I set forth below the allegations in the complaint (ECF 1) and the proposed amended answer ("PAA") (ECF 109-1).

Individual Plaintiff and Defendant are both manifestation or life coaches, who provide clients with guidance to understand and better themselves. (*See* ECF 1, Compl. ¶ 12.) In early 2024, Individual Plaintiff purchased coaching services from Defendant to help improve Individual Plaintiff's manifestation coaching practices. (*See* ECF 1, Compl. ¶ 16; ECF 109-1, PAA at 3.)[1] After meeting with the Defendant, Individual Plaintiff began posting videos on YouTube

[1] Because the Proposed Amended Answer contains duplicate paragraph numbers, I refer to its page numbers for clarity.

on February 9, 2024, to coach others through their manifestation journey. (*See* ECF 1, Compl. ¶ 17; ECF 109-1, PAA at 3.) On March 19, 2024, Defendant terminated their agreement and stopped coaching Individual Plaintiff. (*See* ECF 1, Compl. ¶ 19; ECF 109-1, PAA at 4.) Starting in May 2024, Defendant began posting a series of six YouTube videos specifically discussing Plaintiff. (*See* ECF 1, Compl. ¶ 26; ECF 109-1, PAA at 4) At the same time, Defendant made numerous statements about Plaintiffs on social media websites, including YouTube and Reddit. (*See* ECF 1, Compl. ¶¶ 25-28; ECF 109-1, PAA at 4) The Plaintiff characterizes these videos and statements as "denigrating," "insulting," and "false," while the Defendant states her statements were made to "warn the public of the possibility of the danger of dealing with such a dishonest person" (*See* ECF 1, Compl. ¶¶ 25-28; ECF 109-1, PAA at 4.)

On or about May 2, 2024, Defendant issued a takedown notice pursuant to the Digital Millenium Copyright Act of 1998 (17 U.S.C. § 512(c)) ("DMCA") against eight of Plaintiffs' YouTube videos, which were all subsequently taken down by the platform. (*See* ECF 1, Compl. ¶ 22.) On June 28, 2024, Plaintiffs sent a letter to Defendant asserting that the DMCA takedowns were premised on material misrepresentations. (*See id.* ¶ 30.) The next day, Defendant filed a second takedown notice on three videos, which were all taken down by YouTube. (*See id.* ¶¶ 30-31.)

On the contrary, the Defendant alleges that Plaintiff has harmed Defendant's business and reputation. (*See* ECF 109-1, PAA at 6.) Beginning in April of 2024, Plaintiff has made statements online that demean and attack Defendant. (*See* ECF 109-1, PAA at 5.) On June 1, 2024, Plaintiff made false statements about Defendant in a YouTube video. Then at the end of 2025, Defendant's social media and financial accounts attempted to be hacked into and her YouTube Channel began being reported for Copyright Infringement. (*See* ECF 109-1, PAA at 5.)

Defendant's gross sales subsequently declined from $130,241.00 in 2023, to $73,997.00 in 2024, to $67,153.00 in 2025, to only $13,350.00 in the first six months of 2026. (*See* ECF 109-1, PAA at 5.) Additionally, Defendant's viewership on YouTube declined from thousands of views to barely over 100 views per video.

## II. Relevant Procedural History

Plaintiffs filed the complaint against Defendant in this Court on September 13, 2024. (*See generally* ECF 1, Compl.) Defendant's counsel withdrew from the case on January 7, 2025. (*See* ECF 22, Mot. To Withdraw; ECF 23, Order.) On April 4, 2025, after retaining new counsel and receiving several extensions, Defendant filed her answer to the complaint. (*See* ECF 13, Order; ECF 16, Order; ECF 18, Order; ECF 21, Order; ECF 25, Order; ECF 27, Answer.) Said counsel withdrew as Defendant's attorney on May 19, 2025. (*See* ECF 37, Mot. To Withdraw; ECF 39, Order.) Defendant now proceeds pro se. (*See* ECF 62, Pro Se Consent To Receive Electronic Service.)

The parties consented to conduct all proceedings before a magistrate judge, and Judge Analisa Torres signed the parties' proposed consent form. (*See* ECF 73, Order). On March 25, 2026, I issued a case management order (ECF 84) and set the deadline to file amended pleadings for March 31, 2026. After discussing the possibility of Defendant filing a counterclaim at the May 27, 2026 discovery conference, I set June 29, 2026 as the deadline for Defendant to move to amend her answer to include counterclaims. (*See* ECF 100, Order.) I set the deadline for Plaintiffs to oppose Defendant's motion to amend for July 20, 2026 and the deadline for Defendant's reply in further support of a motion to amend for August 3, 2026. (*See* ECF 108,

Order.) Defendant's motion to amend her answer and the subsequent briefs were timely filed. (*See* ECF 109, Def.'s Mot. To Amend; ECF 118, Pls.' Amend Opp.; ECF 121, Def.'s Amend Reply.)

**LEGAL STANDARD FOR MOTIONS TO AMEND**

When a "scheduling order set[s] a date after which no amendment will be permitted, a plaintiff must meet the requirements of Rule 15(a)(2) and Rule 16(b)(4). *Great W. Ins. Co. v. Graham*, No. 18-CV-6249 (LTS) (SN), 2026 WL 34966, at *6 (S.D.N.Y. Jan. 6, 2026) (quoting *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021)).[2] Under Fed. R. Civ. P. 16(b)(4), after a deadline has passed "[a] schedule may be modified only for good cause and with the judge's consent."

Under Fed. R. Civ. P. 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has held that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011). Under Rule 15, leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000). "Generally, amendment is treated as futile if the proposed claim could not withstand a motion to dismiss." *United States ex rel. Hussain v. CDM Smith, Inc.*, No. 14-CV-9107 (JPO), 2018 WL 11217206, at *1 (S.D.N.Y. Jan. 31, 2018).

[2] Unless otherwise indicated, this opinion and order omits internal quotation marks, citations, and alterations from quoted text.

## DISCUSSION

### I. Rule 16(b)(4)

Plaintiffs argue that the March 31, 2026 deadline for Defendant to amend its pleadings has passed, so Defendant must demonstrate "good cause" under Rule 16(b)(4) for leave to amend. (ECF 118, Pl.'s Amend Opp. at 4.) It is true that the revised case management order (ECF 84) states that March 31, 2026 was the last date to amend the Answer. However, on May 27, 2026, I issued an order extending Defendant's time to amend her answer until June 29, 2026. (*See* ECF 100, Order.) Defendant's PAA (ECF 109-1) was filed June 29, 2026, within the extended deadline. Accordingly Defendant's PAA was timely filed, no Rule 16(b)(4) analysis is needed.

### II. Rule 15(a)(2)

I turn to Rule 15(a)(2) which sets a permissive standard for amendments. *See, e.g.*, *Great W. Ins.*, 2026 WL 34966, at *6.

A. Undue Delay & Prejudice

Plaintiffs argue that since the allegations in Defendant's counterclaims describe events between January and June 2024 in which Defendant was a "direct, firsthand participant," the fourteen-month delay between her answer and this motion to amend is unacceptable, especially given that Defendant's only justification for the delay is that "additional facts and information have come to light." (ECF 118, Pl.'s Amend Opp. at 7-8.) Plaintiffs are correct that the burden of explaining delay rests with the movant. *See Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990); *Sanders v. Thrall Car Mfg. Co.*, 582 F. Supp. 945, 952 (S.D.N.Y. 1983), *aff'd,* 730 F.2d 910 (2d Cir. 1984). However, when a defendant is a pro se litigant, the Court interprets their arguments liberally, so as "to raise the strongest arguments that they suggest."

*Robert Smalls Inc. v. Hamilton*, No. 09-CV-7171 (DAB) (JLC), 2010 WL 3238955, at *1 (S.D.N.Y. July 19, 2010) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)), *report and recommendation adopted*, 2010 WL 3238963 (S.D.N.Y. Aug. 11, 2010); *see also Gromina v. Kazmarck,* No. 22-CV-0744 (JPO), 2024 WL 4534710, at *3 n.2 (S.D.N.Y. Oct. 21, 2024).

Defendant's explanation that "additional facts and information have come to light that necessitate amendments" to her pleadings (ECF 109, FAC Mot. at 1) restates the burden she must meet and does not provide insight into any of those facts or when they were discovered. However, I note that Defendant filed her PAA promptly after obtaining assistance from the City Bar Justice Center Legal Services Clinic, which provides good cause for the timing of her filing. *See, e.g., Dawson v. Pelican Mgmt., Inc.,* 11-CV-1753 (KAM) (LB), 2011 WL 5156596, at *2 (E.D.N.Y. Oct. 28, 2011) ("The Court agrees that plaintiff exercised reasonable diligence by moving to amend as soon as she retained counsel to represent her in this action. Therefore, the Court finds that plaintiff has established good cause under Rule 16(b) of the Federal Rules of Civil Procedure to allow her to modify the Court's Scheduling Order . . . .").

Moreover, the caselaw finds undue delay "only in extreme circumstances when the litigation is too far developed." *Collins v. GKD Mgmt., LP,* No. 19-CV-121-TCB, 2022 WL 17420791, at *3 (N.D. Ga. Aug. 31, 2022); *see also Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) (denying a motion to amend for undue delay when the "motions for leave to amend were filed more than one year after discovery had ended, after dispositive motions had been filed, and between five-and-six years after the lawsuits were begun"). "[T]hat litigation has been ongoing for quite some time does not by itself render the motion to amend untimely." *Collins,* 2022 WL 17420791, at *3.

This litigation is not so far developed as to support undue delay in asking for leave to amend. Discovery was not complete when Defendant moved to amend, and on July 10, 2026, I issued an order (ECF 116) allowing either party to request to extend discovery after July 31, 2026.

Granting leave to amend would not be prejudicial to Plaintiff. "In determining what constitutes prejudice, we consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir. 1993). Plaintiffs argue that since discovery closed on August 8, 2026, and the proposed counterclaims would open new subjects on which Plaintiffs have taken no discovery, Plaintiffs would not be able to complete this discovery before the deadline. (*See* ECF 118, Pls.' Opp. at 9.) Plaintiffs further contend that the trial date of October 26, 2026 would also have to be pushed back. (*See id.*) These arguments do not justify denial of the motion to amend.

"[C]omplaints of the time, effort and money . . . expended in litigating the matter, without more, [do not] constitute prejudice sufficient to warrant denial of leave to amend." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017). Plaintiffs cite *Block v. First Blood Associates* to support their position that leave to amend should be denied, but there, the Second Circuit found that the district court did not abuse its discretion in granting leave to amend where a prejudice argument relied on the "time, effort, and money" involved in litigation. 988 F. 2d at 351.

B. Futility

Leave to amend is properly denied where the proposed claims are futile and thus could not withstand a Rule 12(b)(6) motion. See *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Plaintiffs argue that neither of the proposed counterclaims could survive a motion to dismiss, so that leave to amend should not be granted. (*See* ECF 118, Pls.' Amend Opp. at 10.)

1. Counterclaim for Tortious Interference with Business Relations (Count I)

Plaintiffs argue that leave to amend should not be granted because Defendant's tortious interference with business relations claim is futile since it fails to plead the required elements, complains of competition that is lawful, and is preempted by the Copyright Act. (*See id.* at 11.)

"To state a claim for this [type of tortious interference] under New York law, four conditions must be met: (1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., L.L.C. v. Park Place Ent. Corp.,* 547 F.3d 115, 132 (2d Cir. 2008).

Plaintiffs are correct that Defendant's proposed amended counterclaim for tortious interference would not survive a motion to dismiss, because "[a] properly pleaded complaint for this tort must allege relationships with specific third parties with which the respondent interfered." *AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*, No. 02-CV-1363 (PKL), 2003 WL 21203503, at *6 (S.D.N.Y. May 22, 2003) (collecting cases). The PAA mentions no specific third parties, instead claiming interference with the manifestation community, online audience, and potential and existing clients. (*See* ECF 109-1, PAA ¶ 16.) "A general allegation of interference

with customers without any sufficiently particular allegation of interference with a specific contract or business relationship will not withstand a motion to dismiss." *Envirosource, Inc. v. Horsehead Resource Dev. Co.,* No. 95-CV-5106 (AGS), 1996 WL 363091, at *14 (S.D.N.Y. July 1, 1996). Defendant's reply speaks of "concrete business relationships with identifiable clients" (ECF 121, Def.'s Amend Reply at 3) but does not identify any such clients with specificity. *Minnesota Mining & Mfg. Co. v. Graham-Field, Inc.*, No. 96-CV-3839 (MBM), 1997 WL 166497, at *7 (S.D.N.Y. Apr. 9, 1997) (holding that the allegation that certain customers brought their business elsewhere is insufficient to sustain the defendant's counterclaim).

Defendant does adequately plead interference, which is the second element of the tort. (*See* ECF 109-1, PAA ¶ 17 ("The Plaintiff, knowing of this flourishing relationship, intentionally interfered with it by misappropriating the Defendant's business practices, trade secrets, [and] business model . . . .").

Defendant also fail adequately to allege the third element of the claim – acting for a wrongful purpose or using improper means. The third prong of a tortious interference claim sets is a high bar and generally requires allegations that the conduct in question "amounted to a crime or an independent tort." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015) (citing *Carvel Corp. v. Noonan*, 3 N.Y.3d 182 (2004)).

Defendant has not alleged that Plaintiffs' conduct was criminal or independently tortious. Instead, Defendant states that "[t]he Plaintiff acted with the sole purpose of harming the Defendant" (ECF 109-1, PAA ¶ 18), but she goes on to say that Plaintiffs' actions had the "sole purpose of profiting off of the Defendant and her business, thus taking this profit away from the Defendant and knowingly causing damage to her business" and reputation. (*Id.*) These allegations plausibly suggest that Plaintiffs were "motivated at least in part by [their] own

economic interest," which is not enough to meet the wrongful purpose standard. *RBG Mgmt. Corp. v. Vill. Super Mkt., Inc.*, 692 F. Supp. 3d 135, 150 (S.D.N.Y. 2023); *see also 16 Casa Duse,* 791 F.3d at 262 ("When a defendant has acted with a permissible purpose, such as normal economic self-interest, wrongful means have not been shown.").

The claim's fourth required element – that the defendant's acts injured the relationship, cannot be adequately pleaded when an appropriate relationship has not yet been identified. *Winner Int'l v. Kryptonite Corp.*, No. 95-CV-247 (KMW), 1996 WL 84476, at *4 (S.D.N.Y. Feb. 27, 1996) (explaining that without establishing a "relationship with any specific third party" a claimant cannot establish the other necessary elements to establish a tortious interference claim). Accordingly, Defendant's counterclaim would not survive a motion to dismiss, meaning that the Count I counterclaim is futile.

2. Counterclaim for Defamation (Count II)

Plaintiffs are correct in their assertion that the defamation counterclaim is futile because it is time barred. (ECF 118, Pls.' Amend Opp. at 10.) "Defamation actions under New York law are subject to a one year statute of limitations." *N.Y. Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 224 (S.D.N.Y. 2013) (citing N.Y. C.P.L.R. § 215(3)). "[T]he short statute of limitations encourages the plaintiff to seek a remedy expeditiously in order to avoid further reputational injury and also to limit the amount of damages to which the defendant is exposed." N.Y. C.P.L.R. § 215. "Accrual occurs on the date of publication of the defamatory statement." *Id.*

Defendant's defamation counterclaim rests on the video that Plaintiffs published on June 1, 2024 (*see generally* ECF 109-1, PAA ¶¶ 19-21), meaning that her counterclaim accrued

on June 1, 2025. The limitations period expired on June 1, 2025, while Defendant filed the PAA on June 29, 2026. Accordingly, Defendant's defamation counterclaim is untimely and could not survive a motion to dismiss, meaning that the Count II counterclaim is futile.

C. Leave To Replead

As a general matter, leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2); *See also* Committee Notes on Rules – 2009 Amendment (explaining that "Rule 15 [is] the sole rule governing amendment of pleading to add a counterclaim"). Moreover, "a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [she] has a valid claim." *Matima v. Celli,* 228 F.3d 68, 81 (2d Cir. 2000). However, leave to amend may be denied as futile where there is a "substantive" problem with a suit such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

It is conceivable that Defendant could allege facts demonstrating tortious interference with business relations. Defendant alleges generally that there are identifiable clients that she lost, however, Defendant must adequately allege with specificity who the clients were and how those relationships were injured. (*See* ECF 121, Def.'s Amend Reply at 3.) Additionally, given Defendant concedes that Plaintiff did not act with an improper purpose, Defendant must adequately allege that Plaintiff acted with improper means. (ECF 109-1, PAA at 4 (alleging that Plaintiff acted for the "sole purpose of profiting off of the Defendant and her business").) Count I is denied without prejudice. Additional details can rescue the claim because the defects in the claim are not substantive and can be fixed by better drafting.

There is no basis to conclude that Defendant could allege facts demonstrating defamation. Count II is denied with prejudice, meaning that additional details cannot rescue the claim because the defect in the claim (that it is time barred) is substantive and cannot be fixed by better drafting.

## CONCLUSION

For the foregoing reasons, Defendant's motion to amend her answer (ECF 109) is **DENIED**, without prejudice to renewing the motion to amend her answer to include Count I (tortious interference) but not Count II (defamation) as a counterclaim against Plaintiff. This means that Defendant can file another motion to amend with a new proposed amended answer including a counterclaim for tortious interference (but not defamation) if Defendant can provide truthful allegations: identifying specific relationships with third parties with which she claims Plaintiffs interfered; describing the specific nature of the claimed interference by Plaintiffs in those relationships; sufficiently severe wrongful purpose; and providing specific information about how the relationships were injured.

Any renewed motion to amend the answer shall be filed by Defendant by **September 29, 2026**; any opposition by Plaintiffs to such a motion shall be filed by **October 13, 2026**; and any reply by Defendant in further support of a renewed motion to amend shall be filed by **October 20, 2026**.

DATED: September 15, 2026
New York, NY

SO ORDERED.



**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**